2012 5066 International Industrial Park v. United States Ms. Yersey Good morning. May it please the Court, The trial court erred when it concluded that the right of entry for construction obligated the government to construct access roads on the landowner's property. To the contrary, the plain language of the agreement, starting with its title, right of entry for construction, gave the government the right to construct the access roads. Ms. Yersey, is there any evidence on the record, beyond your argument that the language of the contract is clear, that showed the government intended this contract to be solely a year-long right of entry contract and not requiring the government to construct a road's aims? For all evidence, anything, keeping in mind this testimony by Ms. Cook, the Justice Department lawyer, and I'm going to go give you a little bit of this. During the entire time you were negotiating the August 6, 2008 agreement with the Corps of Engineers, did anyone ever say to you that the Corps had the option not to build the roads? No. Further testimony. Under that agreement, did you understand that the parties would make an exchange, that is, that Mr. Wick would provide an easement over the land necessary and the Corps in turn would construct the road? That was the gist of the agreement. Yes. In an email, July 2, 2008, the Corps of Real Estate Special Representative reports, as per Susan Cook, DOJ attorney, IAP wants the north-south road built to county specifications and has agreed to sign the ROE for C with this provision and ultimately provide the government with a perpetual easement for a $1 consideration. Hector and I believe this is a win-win-win for all parties involved. Other than your argument that the language is clear, have you got anything that counters that? Your Honor, the plain language of the agreement does indicate in paragraph 1 that the landowners are granting an irrevocable right to enter. The testimony of Trude Wenger at trial was that the government, when it enters into rights of entry, always leaves open the option that it would either, that it can or cannot, that it may or may not exercise the right. And the statements given by Ms. Cook about the gist of the agreement, to some extent it's correct in that the government could not demand the easement if the government didn't perform the construction under this agreement, but that's not the same thing as saying that the government had to perform the construction under this agreement. In fact, if you look at, again, paragraph 1, the first enumerated paragraph of the terms and conditions of the agreement, the landowners granting the government a right to enter for the 12 months, it indicates that there could be funding reallocations. And so taking the plain language of the agreement, paragraph 1, in the context of the preamble, which states that the landowners are granting, the only explicit grant in the preamble is the grant of a right of entry. And you take that into account with the title, which is right of entry for construction. The parties did not execute a document entitled construction contract. It's not called sale of an easement. And so there is the testimony, to answer your question directly, there is the testimony of Trude Wenger, but, Your Honor, we don't believe that the statements outside the agreement should be resorted to in this case because there is no ambiguity in the agreement. Only the government offers an interpretation that will allow for the title of the agreement, the preamble, and 16 terms and conditions to be read in harmony. I get it. The government doesn't challenge any of the findings of fact by the court. Is that correct? What it says is the court erred in its construction of the agreement. That's correct. The trial court erred. The trial court did not conclude that the agreement was ambiguous. It relied on the plain language interpretation, which we believe was erroneous as a matter of law. The trial court did not make any factual findings that would resolve any alleged ambiguity. Certainly, the trial court, although it may... That's helpful because there's not a fight about the facts. Let me ask you, we had the agreement, I guess, at JA 11. That's correct. Now, what you referred to as the preamble or the recital was the first paragraph. Is the government's position that a preamble or a recital can never impose binding obligations? I know your position in this particular case. It's well set forth in your brief, but is it the government's view that one can never have a preamble that imposes binding obligations? Consistent with the case law that we cited, a preamble would not... Well, those cases, I mean, those cases all relate to particular situations, and they say that a preamble can't enlarge the obligations of a contract in those cases, and they say that it can't be contrary. But that doesn't mean, I think, and correct me if I'm wrong, it doesn't seem to me that I couldn't find any case that said a preamble can never impose a contractual obligation. I mean, couldn't it theoretically if it was worded appropriately? If it was worded appropriately, presumably it could impose an affirmative obligation, but here we don't have an agreement that falls within that situation. You acknowledge that an appropriately worded preamble under certain circumstances could impose an obligation, but you say that that circumstance doesn't exist here. And that's correct, because if we were to read the phrase, or Karen, to be performed for all land or easement rights to be an affirmative obligation, then you would end up with a rendering paragraph one of the terms and conditions would be rendered superfluous. And so if we want to read this agreement as a whole, give meaning to all of the terms, which is what this court's precedent for contract interpretation requires, then we need to read that language as an introductory recital that sets out the background to the grant of the right of entry, but not as a specific obligation. And in fact, the agreement is structured where the preamble specifically says, states should write grants to the government a right of entry upon the following terms and conditions. Let me ask you, if I could, one final question, then I'll be quiet. In the briefs, to the end of each brief, there's sort of a back and forth about how, you know, if we rule one way, it means that one party doesn't get anything and the other party gets everything. Both sides seem to make that argument. And just as a factual matter, although it's not in the record, and I would ask Mr. Marzullo the same question, what is the present situation on the ground, so to speak, at this location? What is happening now? We know the fence was built as part of the 125 project. I mean, is the government using, going back and forth, using some way to get, what is happening now? The points at the end of the brief sort of raise this question in my mind. Your Honor, the border patrol agents have a statutory right to access a landowner's property within 25 miles of the U.S.-Mexico border. And my understanding is that they continue to exercise that right. I believe that... The border patrol agents, as part of their law enforcement authority, can access the property. It would be a different question as to whether the Customs and Border Protection or the Department of Homeland Security could access across the landowner's property for a purpose other than law enforcement, for example, for the road construction. The purpose of the road construction is law enforcement. It is, but Customs and Border Protection understood that it would need a permanent access route. For $1, did they pay the $1? My understanding, Your Honor, is that there's no dispute about the $1 exchange for the right of entry. You're telling us that the parties intended and these landowners intended to give a perpetual easement for $1. No, Your Honor, I'm not saying that. What I'm saying is that for the $1, the landowners obtained a right of entry, and then if the government exercised the right of entry, constructed the access roads, in exchange for that construction, the government would get an easement. So the government would get an easement if it exercised the right of entry in exchange for that construction. Construction of the road or construction of the fence? In exchange for construction of the road on the landowner's property. But they didn't build the road. They did not build the road. They did not exercise the right to construct. So are they nonetheless claiming a permanent right of entry for the $1? The government is not claiming a permanent right of entry for $1. The $1 gave the government the right to enter for that year period specified in paragraph 1. So they're not entering? My impression from the briefs is that business as usual. The border is being patrolled. The land is being crossed, as it was before. Except that they're using the road constructed by the landowners. The landowners have not constructed an access road on their property, and the government is not using a road that is... Let me clarify. Border Patrol is still accessing the property for its law enforcement purposes. That's the question I'm trying to get you to answer. I apologize, Your Honor. They're accessing it by having claimed an easement of access. The government does not claim that it has an easement across the landowner's property. They're accessing it without any statement of right of access at all? The Border Patrol is accessing it through its statutory right. The Border Patrol agents have a statutory right to access the landowner's property. This agreement was not intended to supplant that statutory right. It was intended to give Customs and Border Protection, the Department of Homeland Security... Then why are you telling us about the Border Patrol? Why did anyone need this arrangement to start with and the mutual promises that were made? Wasn't there a problem with the imperfect road? Right now, the road is a very rough road. There's a blind spot. Wasn't that part of the record? Yes. My response was to... Judge Howell asked what the state of affairs is, and I'm trying to distinguish between the Border Patrol agent's statutory right to cross the property and then the need that Customs and Border Protection had for a permanent route to get to the border fence so that it could construct the border fence and then maintain the border fence. So it's two different parts of Customs and Border Protection that cross the property. How did Customs and Border Patrol initially determine that need? The A-1 project was a portion of the PF-225 border fence construction project. The A-1 project is... To access the A-1 border project, the Corps' construction contractor needed access to the Otay Truck Trail. The Otay Truck Trail takes you to the A-1 border fence project, and it was identified that a permanent easement was needed to get from Ulster Road to the Otay Truck Trail, and that permanent easement was identified as needing to cross the landowner's property. Did they do that on the ground, or did they just do that elsewhere? What I'm driving at is, couldn't you, under statutory law enforcement authority, couldn't Customs and Border Patrol go onto the property and eyeball it? I don't believe that that's the way Customs and Border Protection interpreted its right to be on the property. It's a law enforcement statute that allows the Border Patrol agents to access as part of their law enforcement duty. Your Honor, I see that I'm in my rebuttal time. Okay, we'll save you some time for rebuttal. Let's hear from Mr. Marzullo. Good morning, Your Honors. Answer to your question, Your Honor, the current state of affairs is that the landowner has continued to develop the property, has in fact constructed a major road, Calzada de la Fuente, which connects with an easement generally called the San Diego Gas and Electric easement, and that connects to Alta Road. That road, like the rest of the property, is accessed daily by the Border Patrol. They used the road that the landowner paid for and constructed, and the government did not contribute to that construction. Can anybody go on the road, Mr. Marzullo? Yes, Your Honor. Is it a public road? It is a public road to a point. As the court will recall from the depiction in the contract, there's sort of a dog leg or a backward L here. The horizontal portion is a public road. The vertical portion is actually a private easement belonging to San Diego Gas and Electric, but the Border Patrol cuts the locks and removes blockades and uses that regularly. That's the road from Ote, from one road to the Ote Road? From Calzada de la Fuente, Your Honor, which is the road that was actually constructed, not along exactly the same alignment, but an alignment somewhat south of the one shown in the contract. So the Border Patrol accesses that public road, then they make a left turn heading north, and use a private easement, and that connects with the Otay Truck Trail, which was the object of this agreement. Okay. The gist of the agreement, as the court pointed out, is as Justice Department lawyer Cook testified, that the landowner would contribute the land, and the government would contribute the construction. There's nothing weird or whimsical or unfair about that kind of arrangement. In fact, the government, relying on an entirely different theory when this complaint was filed, filed a motion to dismiss under the Contract Disputes Act, and the court resolved that motion to dismiss at 95 Federal Claims 63, holding that this was a collaborative agreement. Interestingly, at that point, of course, the government was contending that this was a contract, that it was a contract for procurement of an easement. Entirely different theory. That theory, too, was rejected. Now, the government, at all times, obviously intended to construct a road. We know from the stipulations that are found at Appendix 17, Stipulation 18 was that on May 27th of the year 2008, the events occurring here in 2008, that the government awarded a contract to Granite Construction for the A1 project, and that construction contract contained two options. Option number two was the construction of this very road. That contract then, that option, was given a notice to proceed on September 10th, the same year, 2008. And, in fact, Granite Construction commenced to stake and to survey the road. Now, that's when the dispute arose. The dispute being whether the phrase that the road was to be constructed to county specification standards, whether that included the things that go under the pavement, the water mains, the electrical conduits, and so forth. At no time during that dispute did the government say, well, you know what, we don't have to build anything, so the standards are irrelevant. That's no portion of the contract because we don't have to build any road, so we obviously don't have to build it to county specification standards, as the contract states. Turning to the contract itself, paragraph one, it clearly inserts, where it did not previously exist, the phrase, in consideration of the one dollar, which, your honor, I don't think the record shows that it was or wasn't paid, but in consideration of one dollar, and then the testimony is that Mr. Wick, the landowner's representative, inserted the phrase, for additional consideration, and the work herein to be performed. And you'll find on appendix 124, the document where he actually made that insertion, that language was subsequently typed into the agreement by the government, and that language appears in the signed document. Mr. Marzullo, Ms. Cook certainly doesn't seem to walk away from that. She does not, your honor. Indeed, I think the government did a bit of a disservice to Ms. Cook in quoting her as saying she didn't think it was a contract because in the same area, appendix 204 through 206, that the court was reading from earlier, Ms. Cook says, well, it didn't pop into my head whether it was or wasn't a contract. Absolutely. This was the deal, and in fact, part of the reason you have a Justice Department lawyer in the Environment Division negotiating this contract is that she was defending the takings case, on which two of the judges on this panel heard an appeal. She was defending that takings case, and she, I think, properly realized that if we could get the Border Patrol on a road, that it would serve the purposes of both parties. Mr. Marzullo, let me ask you, the first paragraph of the agreement here, is it your position that that is not a preamble, or is it your position that it's a preamble that nevertheless imposes contractual obligations? If it quacks, it's probably a duck, Your Honor. I don't think preamble, as the government would have it, is the first sentence of any document. I don't think it depends on where on the page that language occurs. In fact, I think the rule is that the consideration is to be read in toto, that is, the entire contract is to be read together. So, no, it's not a preamble. It is a statement, and note that it ends with the following terms and conditions, colon. So, in effect, it's almost as if the contract were an entire run-on sentence that begins with a recital of what the consideration for the contract is. Now, of course, that is expanded in paragraph 1, which says that the consideration is the construction of the road to county specification standards. It's expanded by paragraphs 7 and 10. 10, by the way, Your Honor, absolutely inconsistent with the government's interpretation. The government accuses the trial judge of ignoring paragraphs 1 through 16. Well, the government ignores paragraph 10, which provides for an exchange whereby the easement was to be moved from its location where it had the blind spots and was unusable to this usable location. There's nothing conditional there. There's nothing that says, if the government builds the road, then this move will take place. So you're saying that when one looks at the contract in its entirety, it's clear that what we'll call, I think it's correctly, the first paragraph of the agreement does flow in and impose an obligation when read with the rest of the contract. Absolutely. There is no inconsistency, as the government claims. From the view of the intent of the parties in putting this thing together, I find it disturbing that one side would write what it clearly considers key language for the work to be here and to be performed into something that they don't consider to be part of the agreement itself. Clearly, that's a key term of bargaining. Agreed. Well, absolutely, Your Honor. And I think it's worth noting, the court also raised the question of whether this is in fact, could under any circumstances be a 12-month agreement. And the court will note, and I think neither of the parties pointed this out, and this is our failing, paragraph 14 actually recites the purpose of this agreement. That's really a recital, if you will, although it occurs down in paragraph 14. And it includes not only the construction of the road, but the construction, operation, and maintenance of the border fence. That is a purpose of this document. Finally, the government makes the argument in its brief that if this were an agreement for construction, they wouldn't need a right of entry because it would be implied in the duty to construct. I think the same argument is appropriately made with respect to the government's interpretation, which is, well, it's a right to construct if we want to. If this agreement were an option, if you will, or a right of the government to construct the road if they want to, then that option would necessarily imply every bit as much as would an agreement that obligates them to construct. It would imply the right to enter to do this voluntary construction, this optional construction, if you will. So I think at a maximum, the parties sort of come to a neutral result on this argument about whether the use of the phrase right of entry, and I think we all have to agree that that was perhaps not a model of contract drafting, but whether the use of that phrase favors one party or the other, I think it does not. If the Court has no further questions. Any more questions? Thank you, Mr. Bannon. Thank you, Your Honor. Okay, Ms. Yossi, you have a couple of minutes. Just to respond to a few points that Mr. Marzullo made. First, the Border Patrol agents that access the property today are doing so solely for the purposes of their authority to patrol the border. They're not accessing it to get to the Otay truck trail in order to maintain or to construct the border fence. This case is not about the government's access of the property, but it's about whether the government was obligated to construct access roads. And again, when you look at the title of the agreement, which is, Mr. Marzullo said, is maybe not a model of clarity, but we look at the title, the agreement that the parties chose to execute is a right of entry for construction. Now, Mr. Marzullo says that the numbered paragraph one, I believe is what he was referring to, is setting out the consideration that the government is providing for the right of entry. But nothing about paragraph one contains any obligatory language. It is simply doing nothing more than granting a right to enter. And it does not state that the government shall enter or that the government shall construct the roads. So the landowners are reading into a numbered paragraph of this agreement a construction obligation that is not there. I just have one, if I could, just one sort of housekeeping question. The map, or I guess the drawing, A15 of the joint appendix, Mr. Marzullo referred to the dog leg there. Where on that, where is the border in this, or in what direction is the border in this drawing? The border is below the Exhibit 1 words. Okay, yeah. So it's below, and the fence is constructed to the northeast on the map. What was the work herein to be performed that the owner's representative inserted? Was that work to be coming onto the property and taking a look at it? The work herein to be performed is referencing the construction that's identified in Paragraph 1, but it doesn't say that it's work that shall be performed. It says in consideration of the work herein to be performed. That's right. And then Paragraph 1, however, indicates an irrevocable right to enter, and if the government is entering, is committed and obligated to enter the property to perform the construction, then Paragraph 1 doesn't make any sense. It's rendered meaningless. I see that my time is up. Yes? I'm sorry to just ask one more question about this drawing here. You're saying that the border would be under what's in the Exhibit 1 designation, and that the fence that was being constructed is to the northeast? So it's not right along the border? I'm sorry, to the southeast. Oh, southeast. I'm sorry, I misspoke. Oh, okay. It's to the southeast. Okay. All right. That's all I have to clear up. All right. Thank you. This is Nancy and Mr. Rosell. The case is taken in this division.